TIMOTHY DURLEY,

               Petitioner,

                                  Case No. 22-cv-793-pp

   v.

KENYA MASON,[1]

               Respondent.

---

**ORDER GRANTING PETITIONER'S MOTION TO CLARIFY/CORRECT CASE (DKT. NO. 55), GRANTING PETITITIONER'S MOTION FOR LEAVE TO FILE SURREPLY (DKT. NO. 58), GRANTING RESPONDENT'S MOTION TO DISMISS (DKT. NO. 43), DISMISSING CASE AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

---

On July 11, 2022, the petitioner filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254, challenging his 2018 conviction in <u>State of Wisconsin v. Timothy Durley</u>, Milwaukee County Circuit Court Case No. 2017CF5754, for second-degree reckless homicide and possession of a firearm by a felon. Dkt. No. 1 at 2. On March 20, 2024, the court granted the petitioner's motion to stay and administratively closed the case so that the petitioner could return to state court and exhaust his administrative remedies. Dkt. No. 41. Rather than filing a motion to reopen (as directed by the court), the petitioner filed another petition for writ of *habeas corpus* and the clerk's office opened a new case.

---

[1] When the petitioner filed his original petition, the Warden of Waupun Correctional Institution was Randall Hepp. The current Warden is Kenya Mason. The court will update the docket to reflect that Kenya Mason is the correct respondent.

1

<u>Durley v. Hepp</u>, Case No. 25-cv-539. To preserve the original filing date, the court construed that new petition as a motion to reopen this case. <u>Id.</u> at Dkt. No. 8. The court ordered the clerk's office to transfer the new petition to this case and docket it as a motion to reopen. <u>Id.</u> The court then dismissed Case No. 25-cv-539. <u>Id.</u>

After the respondent had filed a motion to lift the stay and dismiss the petition on the ground that all the petitioner's claims are procedurally defaulted, dkt. no. 44, the court received from the petitioner a motion "to clarify federal *habeas corpus* as Case No. 25-cv-539 or as Case No. 22-cv-793," dkt. no. 55. In that motion, the petitioner asked the court to incorporate into this case the claims of ineffective assistance of appellate counsel that he had raised in Case No. 25-cv-539. <u>Id.</u> at 2. The parties fully briefed the motion to dismiss, then the court received from the petitioner a motion for leave to file a surreply along with a six-page surreply brief and sixty-six pages of exhibits. Dkt. Nos. 58, 59, 59-1.

Because of the petitioner's procedural default and his failure to establish actual innocence, the court will grant the respondent's motion to dismiss, decline to issue a certificate of appealability and dismiss the case.

**I.    Background**

A.    <u>Underlying Conviction</u>

The charges against the petitioner arose from a road rage incident in which a man was shot in the chest. Dkt. No. 21-2 at 2. The State of Wisconsin filed a criminal complaint against the petitioner in Milwaukee County Case No.

2017CF5754 (available at https://wcca .wicourts.gov). On March 4, 2018, a jury found the petitioner guilty of second-degree reckless homicide and possession of a firearm by a prohibited person. Id. On April 5, 2018, the court sentenced the petitioner to nineteen years of initial confinement followed by ten years of extended supervision. Id. The state court entered judgment on April 6, 2018. Id. That same day, the petitioner filed in state court his notice of intent to pursue post-conviction relief. Id. On December 15, 2020, the Wisconsin Court of Appeals summarily affirmed the petitioner's conviction on direct review in Appeal No. 2019AP1473-CR, rejecting his claim that there was insufficient evidence to convict him. Dkt. No. 21-2. The Wisconsin Supreme Court denied his petition for review on March 24, 2021. Dkt. No. 21-3.

B.     Federal *Habeas* Petition

In his federal *habeas* petition, the petitioner raised five grounds for relief: (1) ineffective assistance of counsel; (2) the petitioner's witnesses were not asked where the petitioner was on the day of the shooting; (3) the court of appeals erred by stating that a witness had identified the petitioner as the shooter; (4) the petitioner's cellular device and another individual's cellular device "never pinged off any towers" and there was no surveillance placing the petitioner at the scene; and (5) the petitioner's van had been stolen but he didn't report it because the van had not been registered to him. Dkt. No. 1 at 6-9. At screening, the court assumed (for purposes of screening) that the petitioner was alleging ineffective assistance of counsel in Grounds One, Two, Four and Five. Dkt. No. 11.

3

The respondent moved to dismiss, asserting that all the claims were new and unexhausted. Dkt. Nos. 20, 21. The petitioner requested a stay, which the court granted. Dkt. No. 41.

C.     State *Habeas* Petition

The petitioner returned to state court and filed a motion under Wis. Stat. §974.06 in the circuit court and a petition for writ of *habeas corpus* in the Wisconsin Court of Appeals. In his state *habeas* petition, the petitioner argued that appellate counsel was ineffective: (1) for not arguing on direct appeal that trial counsel was ineffective; (2) for raising frivolous claims despite the petitioner's innocence; (3) for pursuing an appellate issue that the petitioner did not approve; (4) for not investigating the petitioner's whereabouts on the night of the shooting and for not arguing that trial counsel was ineffective in this regard; and (5) for failing to argue that the petitioner was denied his right to due process at his final pretrial hearing when the petitioner requested a new attorney due to a conflict of interest. Dkt. No. 44-1 at 3. On March 13, 2025, without requiring a response from the state, the court of appeals denied the petitioner's claims as procedurally barred. Id. at 1.

The Wisconsin Supreme Court denied the petitioner's petition for review. Dkt. No. 44-2. It also denied the petitioner's motion for reconsideration. Dkt. No. 44-2 at 2.

D.     New *Habeas* Petition Filed With Motion to Lift Stay (Dkt. No. 45)

After the respondent moved to lift the stay and to dismiss the petition, dkt. no. 43, this court received from the petitioner a second petition for writ of

4

*habeas corpus* under §2254. Dkt. No. 45. As noted, the clerk's office docketed that petition as a new case—Case No. 25-cv-539. This court recognized that the petitioner was attempting to lift the stay in this case, construed the new petition as a motion to reopen, directed the clerk's office to docket it in this case as a motion to reopen and dismissed the new case. Case No. 25-cv-539, Dkt. No. 8.

The petition, docketed in this case as a motion to reopen, contains new allegations that do not overlap with the allegations from the original petition filed in this case. Dkt. No. 45. The petitioner cites Milwaukee County Case No. 2017CF5754 and explains that he challenged the sufficiency of the evidence on direct review. Id. at 3. He reports that on March 20, 2024, he filed a §974.06 motion in the Milwaukee County Circuit Court, arguing ineffective assistance of trial counsel; he says that motion was denied without a hearing. Id. at 4. He also says that on November 13, 2024, he filed a *habeas* petition in the Wisconsin Court of Appeals, but that the state appellate court denied that petition on December 19, 2024. Id. at 5. He states that the Wisconsin Supreme Court denied review on March 13, 2025, and denied his motion for reconsideration. Id. at 6.

Under "grounds for relief," the petitioner lists five grounds—all related to the ineffective assistance of appellate counsel. First, he says that appellate counsel was ineffective for raising a single, frivolous issue on direct review. Id. at 6. Second, he argues that appellate counsel should have raised ineffective assistance of trial counsel. Id. at 7. The petitioner explains that at the time of

5

the shooting, he lived in a rooming house and had the phone number of his landlord. Id. He asserts that counsel could have called the landlord and talked to other tenants to corroborate his story that he was at the rooming house at the time of the shooting. Id. at 8. Third, he argues that appellate counsel failed to raise ineffective assistance because there was a communication break down and the petitioner wanted other counsel. Id. Fourth, the petitioner asserts that appellate counsel was ineffective in failing to ask the tenants at the rooming house where the petitioner was at the time of the shooting. According to the petitioner, appellate counsel sent a letter to the house but never visited the house or called the phone number. Id. at 9. Fifth, the petitioner says that his appellate counsel should have argued on direct appeal that the petitioner and other witnesses from the rooming house told police that his van was stolen and that the victim's girlfriend never pointed to the petitioner at the trial. Id. at 10.

## II. Petitioner's Motion to Clarify Case Number (Dkt. No. 55)

After the clerk's office docketed in this case the second federal *habeas* petition, dkt. no. 45, and the petitioner filed a brief in opposition to the respondent's motion to dismiss, dkt. no. 54, the court received from the petitioner a "motion to clarify the correct case number," dkt. no. 55. In that motion, the petitioner asks which case number he should use because he filed a "new 28 U.S.C. §2254 federal *habeas corpus* motion alleging ineffective assistance of appellate counsel." Dkt. No. 55. At the bottom of the motion, he asks the court to "convert" his newly filed petition alleging ineffective assistance of appellate counsel or to screen his new petition. Id. at 2.

6

The respondent did not respond to the motion to clarify case number, but did file a reply brief supporting his motion to dismiss in which he addresses the state court's treatment of the petitioner's ineffective assistance of appellate counsel claims.

On May 13, 2025—a week before the court received the petitioner's motion to clarify the case number—the court entered an order dismissing Case No. 25-cv-539. It is likely this court's order of dismissal and the petitioner's motion crossed in the mail. The fact that the court has dismissed Case No. 25-cv-539 means that any documents the court received after May 13, 2025 that were related to the incidents involved in this petition have been filed in this case (Case No. 22-cv-793). To the extent that the petitioner is asking the court to incorporate the claims from his second petition into his original petition—or to screen the new petition—the court understands that the petitioner wishes to bring in the same case all his ineffective assistance of trial counsel and appellate counsel claims relating to the shooting incident. The court will consider and address all the petitioner's claims—from the original petition, dkt. no. 1, and from the motion to reopen, dkt. no. 45—below.

## III. Petitioner's Motion for Leave to File a Surreply (Dkt. No. 58)

On May 29, 2025, the court received from the petitioner a motion to file a surreply brief in opposition to the respondent's reply brief. Dkt. No. 58. The petitioner did not explain why he needed to file the surreply; he cited Civil Local Rule 7(i) (E.D. Wis.), which states that any motion not authorized by the rules must be filed as an attachment to a motion requesting leave to file it. Dkt.

No. 58. Although neither the Federal Rules of Civil Procedure nor this court's local rules allow for a surreply, the petitioner has filed seventeen cases in this district since 2020 and the court wants to make sure that all his claims have been raised and addressed in this case. For that reason alone, the court will grant the petitioner's motion for leave to file a surreply.

## IV. Respondent's Motion to Dismiss

### A. Respondent's Brief (Dkt. No. 44)

The respondent asks the court to dismiss the petition on the ground that the petitioner's claims are procedurally defaulted. At the time the respondent filed his motion, the petitioner had filed only his initial petition alleging ineffective assistance of trial counsel and an error in the Wisconsin Court of Appeals' decision. But the basis for the respondent's motion—procedural default—applies to all the petitioner's claims, including those he raised in Dkt. No. 45 (the second petition, docketed in this case as a motion to reopen).

The respondent argues that when the petitioner returned to the state courts on his unexhausted claims, he raised ineffective assistance of appellate counsel in five ways. Dkt. No. 44 at 3. The Wisconsin Court of Appeals rejected the petitioner's claims *ex parte*, citing three procedural reasons; the respondent argues that these same three reasons bar the claims raised in the petitioner's federal petition. Id. First, the Wisconsin Court of Appeals held that the petitioner could not use a Knight petition to appeal the denial of a previous Wis. Stat. §974.06 motion filed in the circuit court and that it would be too late for the petitioner to appeal the denial of a previous §974.06 motion. Id. at 4.

8

With respect to this ruling, the respondent argues that the ninety-day deadline for appealing a civil matter in the state court (and the §974.06 motion is a civil matter), is jurisdictional and that that deadline passed long ago. Id. (citing Wis. Stat. §809.30(2)(L). For this reason, the respondent argues that the petitioner cannot bring any claims that he previously brought in his Wis. Stat. §974.06 motion. Id.

Second, the Wisconsin Court of Appeals determined that the petitioner improperly had included in his Knight petition his claims regarding postconviction counsel's failures. Id. at 5. The respondent argues that those claims were brought in the wrong court. Id.

Third, the Wisconsin Court of Appeals ruled that the petitioner's claims against appellate counsel were inadequately pled because the petitioner failed to make a showing that any claims were "clearly stronger" than what his appellate attorney brought on direct review. Id. at 5 (citing Romero-Georgana, 360 Wis. 2d 522, 530 (Wis. 2014)). The respondent cites Seventh Circuit authority holding that a claim is procedurally defaulted on federal *habeas* review when it fails to satisfy Romero-Georgana's "clearly stronger" requirement. Id. (citing Garcia v. Cromwell, 28 F.4th 764, 774-75 (7th Cir. 2022)).

B.     Petitioner's Response and Brief in Opposition (Dkt. Nos. 53, 54)

On May 20, 2025, the petitioner filed a "response to the respondent's motion to dismiss in opposition," dkt. no. 53, and a separate brief in opposition, dkt. no. 54. The two-page response states that the petitioner is

9

filing a "motion in opposition to respondent motion to dismiss" and attaching the court of appeals decision and brief in opposition to the respondent's brief. Dkt. No. 53 at 1. The petitioner asks the court to deny the respondent's motion to dismiss and to issue a certificate of appealability because he has not procedurally defaulted his claims. Id.

The petitioner's ten-page brief in opposition to the motion to dismiss asserts that his appellate counsel violated his rights by "(1) due process. (2) duty to investigate. (3) ineffective assistance of appellate counsel. (4) alibi defense." Dkt. No. 54 at 1. The petitioner explains the steps that he took to exhaust his claims at each level, starting with a Wis. Stat. §974.06 motion that was denied on April 2, 2024. Id. at 2. He also filed a petition for writ for *habeas corpus* with the Wisconsin Court of Appeals that was denied on December 19, 2024. Id. at 1. The Wisconsin Supreme Court denied his petition for review on March 13, 2025. Id. at 2. On March 31, 2025, the Wisconsin Supreme Court denied his motion for reconsideration. Id.

The petitioner correctly recounts the cause-and-prejudice standard for excusing a default. Id. at 3–4. He reasserts that his appellate counsel was ineffective because counsel raised "only one issue" on direct appeal. Id. at 4. He argues that his claims are not procedurally defaulted because the Wisconsin Court of Appeals did not "reject[]" his claims but rather concluded that his petition "should be denied ex parte." Id. The petitioner further argues that the respondent has failed to show that he defaulted and has failed to cite case law regarding sufficient reasons justifying a default. Id. at 6. He points out that he

filed a §974.06 motion, a <u>Knight</u> petition and a petition for review, and argues that all were denied. <u>Id.</u>

The petitioner argues that if the court finds that he procedurally defaulted on his claims, it was the fault of his appellate counsel, who was ineffective. <u>Id.</u> at 7. According to the petitioner, his appellate counsel should have known that the "one frivolous issue" (sufficiency of the evidence) that counsel raised had no merit because counsel had raised the same issue with other defendants without success. <u>Id.</u> He argues that his appellate attorney should have raised ineffective assistance of trial counsel during the state appellate review. <u>Id.</u> at 8.

The petitioner says that there will be a miscarriage of justice if the court finds he defaulted because he is actually innocent. <u>Id.</u> In support of his actual innocence argument, he cites to the jury testimony of the victim's girlfriend (Amanda Larson), the petitioner's girlfriend (Velma Jackson), the application for the cellular device "ping" and the statements from his roommates, Anna and Corinena, regarding his van being stolen. <u>Id.</u> at 9. He also cites a statement from his father, who told officers that he talked to the petitioner on his cell phone (which the petitioner says "never bounced off of any towers or pinged that day"). <u>Id.</u> The petitioner asserts that there was only one witness who said that he was the shooter but that the court of appeals erroneously said that there were two witnesses who identified him as the shooter. <u>Id.</u>

  C. <u>Respondent's Reply Brief</u> (Dkt. No. 56)

The respondent replies that the only issues for this court to decide are whether the petitioner's claims were rejected on state procedural grounds, whether those grounds are adequate and independent as a general matter and whether the petitioner can show cause and prejudice or actual innocence. Dkt. No. 56 at 1. The respondent first points to the court of appeals' ruling that even if the petitioner had filed his claims in the right forum, they were inadequately pled under Romero-Georgana because the petitioner did not show that they were clearly stronger than the claim that counsel brought on direct appeal. Id. at 2. The respondent argues that Romero-Georgana is an adequate and independent basis for the state court ruling under Seventh Circuit case law and whether it was properly applied is a state court question that the petitioner cannot raise in this federal court. Id. (citing Garcia v. Cromwell, 28 F.4th 764, 774–75 (7th Cir. 2022)).

As for the petitioner's actual innocence claim, the respondent says that the petitioner had the burden to support his allegations "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Id. at 3 (quoting Schlup v. Delo, 513 U.S. 298, 324 (1995); Woods v. Schwartz, 589 F.3d 368, 377 (7th Cir. 2009)). The respondent points out that the petitioner does not argue new evidence but rather cites to existing evidence. Id. The respondent says that it is not even clear what evidence the petitioner is referencing in his brief, although it appears to be portions of his testimony from the jury trial. Id.

<u>Petitioner's Motion for Leave to File Surreply, Surreply Brief</u>
       (Dkt. Nos. 58, 59)

The petitioner's six-page surreply brief reasserts his belief that he has brought his claims before every level of the Wisconsin courts. Dkt. No. 59 at 1. He says that he can prove his innocence because the victim's girlfriend never pointed to him at the jury trial, and his father talked to him on a cell phone that never pinged in the area where the victim was shot. <u>Id.</u> at 2. He adds that there were two witnesses in the rooming house who said that his van was stolen, and that he would have been found not guilty if his roommates had been called to testify. <u>Id.</u> at 3.

The petitioner says that if he defaulted, he has a sufficient reason for the default—his appellate counsel's ineffectiveness. <u>Id.</u> He reasserts that his counsel raised the wrong argument on appeal and should have known that the argument was frivolous. <u>Id.</u> at 4. The petitioner also argues that he suffered prejudice when the state did not allow into evidence the fact that his cellular device never pinged any nearby towers the day of the shooting. <u>Id.</u> at 4.

The petitioner attached a photo array, dkt. no. 59-1, an incident report with Jackson's statement identifying the petitioner as the shooter, <u>id.</u> at 4-5, statements from Annie Anderson and Corinena Howard (residents of the rooming house) who said that they either had not seen the petitioner's van for several weeks or that the petitioner had said it was stolen, <u>id.</u> at 6-9, and an interview with Larson (who did not pick the petitioner from a photo array), <u>id.</u> at 10-13. One incident report includes a statement from the petitioner's father, who said that he had not seen the petitioner for a few months but had spoken

13

to him on the phone within the past few weeks using the number 216-414-8153. Id. at 14. The petitioner included transcript testimony from Jackson, who testified that she was riding in the van with the petitioner when they collided with another car and the petitioner shot the victim. Id. at 15-30. The petitioner also attached the transcript testimony of Larson, who testified that she did not get a good look at the shooter and was unable to make an identification. Id. at 31-45. The attached exhibits included the applications for tracking devices. Id. at 46-66.

     E.    <u>Analysis</u>

        1.   *Procedural Requirements*

Under the Antiterrorism and Effective Death Penalty Act of 1996, a person incarcerated under the judgment of a state court must exhaust available state-court remedies before a district court may consider the merits of a constitutional claim in a federal *habeas* petition. 28 U.S.C. §2254(b)(1)(A). The exhaustion requirement gives the state court an opportunity to consider and correct alleged violations of the federal rights of persons who are incarcerated by the state. <u>Bolton v. Akpore</u>, 730 F.3d 685, 694 (7th Cir. 2013). To exhaust his claims, "[a] petitioner must raise his constitutional claims in state court 'to alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate squarely that federal issue.'" <u>Weddington v. Zatecky</u>, 721 F.3d 456, 465 (7th Cir. 2013) (quoting <u>Villanueva v. Anglin</u>, 719 F.3d 769, 775 (7th Cir. 2013)). To comply with this requirement, the incarcerated person must "fairly present" the claim in each appropriate state

14

court. Bolton, 730 F.3d at 694-95. Failure to fairly present each claim results in procedural default.

If the petitioner fairly presents the claim but the state court rejects the claim on a state law ground that is adequate and independent of the merits of the federal claim, federal *habeas* relief is not available. Garcia, 28 F.4th at 764. This is because "principles of comity and federalism dictate against upending the state-court conviction" and the federal claim is deemed procedurally defaulted." Id. (citing Thomas v. Williams, 822 F.3d 378, 384 (7th Cir. 2016)). Under such circumstances, the federal petitioner cannot proceed unless he can establish "cause" for and "prejudice" from the default. Id. (citing Johnson v. Thurmer, 624 F.3d 786 (7th Cir. 2010)).

2. *State Review*

Regarding the pending motion to dismiss, it is important to understand Wisconsin's postconviction process. A defendant who has been convicted in state court must "file a motion for postconviction . . . relief [under Wis. Stat. §974.02] before a notice of appeal is filed unless the grounds for seeking relief are sufficiency of the evidence or issues previously raised." Wis. Stat. §809.30(2)(h). "If an issue is raised in the § 974.02 motion but relief is denied by the trial court, the defendant may then appeal to the Court of Appeals of Wisconsin." Page v. Frank, 343 F.3d 901, 906 (7th Cir. 2003). After the deadlines for filing postconviction motions under §974.02 and for taking a direct appeal have expired, the defendant can make a collateral attack on the

15

judgment under §974.06. Such a collateral challenge follows the same procedural path as the direct appeal. Id. at 906.

On April 5, 2018, the petitioner's trial attorney filed a notice of intent to pursue post-conviction relief (docket available at https://www.wicourts.gov). The state court entered judgment the next day. Id. After receiving several extensions of the deadline to file a postconviction motion or notice of appeal, the petitioner filed his notice of appeal on August 8, 2019. Id. On direct review, the petitioner's appellate attorney raised a single challenge to the sufficiency of the evidence, arguing that there was insufficient evidence to sustain the petitioner's homicide conviction because the evidence showed that he killed the victim intentionally rather than recklessly (and that a finding of intent precludes a finding of recklessness). State v. Durley, Case No. 2019AP1473-CR, 2020 WL 13358042, *1 (Wis. Ct. App. Dec. 15, 2020). The court of appeals summarily affirmed on December 16, 2020, stating that the evidence "support[ed] the finding that [the petitioner] caused the victim's death" because two witnesses had testified that he shot the victim in the chest and because the doctor who performed the autopsy on the victim testified that the gunshot would cause the victim's death. Id. at *2. The court of appeals also determined that the evidence supported the finding "that [the petitioner] caused the victim's death by conduct that was criminally reckless" because "when [the petitioner] shot a gun at the victim's chest, he created an unreasonable and substantial risk of death or great bodily harm [under Wis. Stat. §939.24(1)] and was aware of that risk." Id. The court reasoned that recklessness and intent to

kill are not mutually exclusive and found the evidence sufficient to support the jury's verdict. Id. at *3. The Wisconsin Supreme Court denied the petition for review. So, on direct review, the petitioner exhausted a single claim—a sufficiency of the evidence claim. That was the only claim that he had exhausted at the time he filed his federal *habeas* petition.

Although the petitioner argued ineffective assistance of appellate counsel in his original federal *habeas* petition, he simultaneously admitted that he had not exhausted any of those claims. The court allowed him to return to the state courts for review. Under Wis. Stat. §974.06, a criminal defendant can ask the court that imposed the sentence to vacate, set aside or correct the sentence. Wis. Stat. § 974.06(1). But under Wisconsin's postconviction rules, a defendant must raise all available claims for relief in his first postconviction motion or on direct appeal. State v. Escalona-Naranjo, 185 Wis. 2d 168 (1994). The Escalona-Naranjo bar precludes a defendant from using a §974.06 motion to raise constitutional claims that could have been raised, but were not, in a §974.02 motion or on direct appeal absent a "sufficient" reason for the failure to do so. Escanola-Naranjo, 185 Wis. 2d at 181-82.

The petitioner filed a motion for postconviction relief in the circuit court on March 29, 2024, arguing ineffective assistance of trial counsel. Dkt. No. 45 at 4. The circuit court denied that motion on April 2, 2024. Id. at 5. The petitioner has not provided this court with a copy of that motion or that court's decision; the record is clear that he did not appeal that decision, filing instead

17

a state *habeas* petition—a <u>Knight</u> petition—with the Wisconsin Court of Appeals.

The Wisconsin Court of Appeals denied the petitioner's request for appointment of counsel on November 21, 2024 and denied his *habeas* petition on December 19, 2024. The court of appeals explained that it previously had affirmed the petitioner's conviction on direct review and that the court had denied the petitioner's motion for postconviction relief because the petitioner had not provided a sufficient reason for his failure to assert his claim earlier. <u>Id.</u> at 3. The court of appeals gave three reasons for denying the petition. First, the petitioner did not include a copy of his Wis. Stat. §974.06 motion, so the appellate court could not determine whether he had raised some of his current arguments in the §974.06 motion. The court of appeals emphasized that filing a petition for writ of *habeas corpus* with the appellate court is not a substitute for appealing the denial of the postconviction motion. Dkt. No. 44-1 (citing <u>State v. Pozo</u>, 258 Wis. 2d 796, 802 (Wis. Ct. App. 2002)). Second, to the extent that the petitioner did not pursue his current claims in his §974.06 motion, a claim of ineffective assistance of counsel is waived if it is not preserved by raising it at a postconviction hearing. <u>Id.</u> at 4 (citing <u>State v. Machner</u>, 92 Wis. 2d 797, 804 (Wis. Ct. App. 1979)). The court of appeals explained that a "<u>Knight</u> petition is not the proper vehicle for seeking redress of the alleged deficiencies of postconviction counsel" and that a "claim of ineffective assistance of postconviction counsel should be raised in the trial court either by a petition for habeas corpus or a motion under Wis. Stat. §974.06." <u>Id.</u>

18

(citing State ex rel. Rothering v. McCaughtry, 205 Wis. 2d 675, 681 (Wis. Ct. App. 1996)). The court of appeals determined that the petitioner had not raised the claim in the proper forum. Id. Third, the court of appeals stated that any claims properly raised in the Knight petition were inadequately pled with respect to counsel's performance and any resulting prejudice. Dkt. No. 44-1 at 4. The appellate court held that the petition was conclusory and that the petitioner had failed to make any arguments that were "clearly stronger" that those raised on appeal. Id. at 5 (citing Romero-Georgana, 360 Wis. 2d 522).

### 3. *Procedural Default*

The petitioner argues that he did not procedurally default because he has raised his claims at every level. Although the petitioner did *raise* his claims when he returned to the state court, he did not *appeal* the trial court's denial of his §974.06 motion and his ineffective assistance claim. That means that his ineffective assistance of trial counsel claims are procedurally defaulted. The petitioner raised his ineffective assistance of appellate counsel claims in a Knight petition, but the Wisconsin Supreme Court denied that petition on procedural grounds.

The question for this court is whether the reasons cited by the Wisconsin Court of Appeals "clearly and expressly" relied on a state procedural bar that is both independent of the federal question and adequate to support the judgment. See Triplett v. McDermott, 996 F.3d 825, 829 (7th Cir. 2021). When considering whether a state court decision rests on independent and adequate state law grounds, federal courts look to "the last *explained* state-

19

court judgment." <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 805 (1991) (emphasis in original). "The test to avoid procedural default in federal court is whether the state court's decision rests on the substantive claims primarily, that is, whether there is no procedural ruling that is independent of the court's decision on the merits of the claims." <u>Holmes v. Hardy</u>, 608 F.3d 963, 967 (7th Cir. 2010). The federal court looks at whether the state court's procedural ruling is primary. If it is, then the procedural ruling is independent. <u>Id.</u> A state law ground is "adequate" "when it is a firmly established and regularly followed state practice at the time it is applied." <u>Thompkins v. Pfister</u>, 698 F.3d 976, 986 (7th Cir. 2012). When considering the adequacy of a state law ground, the court does not consider "whether the review by the state court was proper on the merits." <u>Lee v. Foster</u>, 750 F.3d 687, 694 (7th Cir. 2014).

The petitioner's ineffective assistance of trial counsel's claims are procedurally barred if he did not previously raise them in a §974.02 motion, *unless* he triggered an exception by satisfying the pleading requirements to bring an ineffective assistance of postconviction counsel claim to excuse the default. The court of appeals determined that the petitioner did not satisfy those requirements and invoked <u>Romero-Georgana</u>'s "clearly stronger" requirement when denying his petition *ex parte*. Dkt. No. 44-1 at 1. The court of appeals relied entirely on the petitioner's failure to meet the burden under <u>Romero-Georgana</u>, finding that the petition was "conclusory" and "rel[ied] on numerous unsupported assertions." <u>Id.</u> at 5. The court did not otherwise engage in a discussion of the merits. The court's reliance on <u>Romero-Georgana</u>

20

was independent of the federal question (ineffective assistance of appellate counsel) and adequate to support the judgment. See Garcia, 28 F.4th at 775 (concluding that Escalona-Naranjo and Romero-Georgana are "firmly established and regularly followed" rules of Wisconsin postconviction procedure."). The petitioner has procedurally defaulted on his ineffective assistance claims.

### 4. *Cause and Prejudice*

Having found that the petitioner procedurally defaulted, the court still may excuse default if the petitioner can show either (1) cause for the default and resulting prejudice or (2) that the failure to consider the federal claim will result in a fundamental miscarriage of justice. Davila v. Davis, 582 U.S. 521, 528 (2017). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). "Prejudice means an error which so infected the entire trial that the resulting conviction violates due process." Weddington, 721 F.3d at 465 (quoting Smith v. McKee, 598 F.3d 374, 382 (7th Cir.2010)).

Whether an attorney's ineffective assistance is sufficient to overcome a procedural default is evaluated under the deficient performance and prejudice test from Strickland v. Washington, 466 U.S. 668 (1984). Coleman v. Thompson, 501 U.S. 722, 752 (1991). For a claim of ineffective assistance of appellate counsel, the deficient performance requirement is not satisfied unless

21

the unraised claim "was plainly stronger than those actually presented to the appellate court." <u>Davila</u>, 137 S. Ct. at 2067. The same "clearly stronger" standard applies for the claim that postconviction counsel was ineffective in selecting the issues for appeal. <u>Romero-Georgana</u>, 360 Wis. 2d at 545-46.

The petitioner continues to argue ineffective assistance of appellate counsel as cause for the default, but the petitioner never appealed the denial of his §974.06 motion and failed to meet the pleading requirement to bring an ineffective assistance of appellate counsel claim. More important, the petitioner has not demonstrated prejudice. He has not demonstrated to this court that absent the alleged ineffective assistance of appellate counsel, there would be a reasonable probability of a different result. First, he argues that counsel was ineffective in failing to bring more than one issue on appeal, dkt. no. 54 at 7, but the Wisconsin Court of Appeals determined that no other claim was clearly stronger than the one brought on appeal, dkt. no. 44-1. It is irrelevant that appellate counsel challenged the sufficiency of the evidence in other cases—with other defendants—and lost; sufficiency of the evidence is a very fact-based claim and the facts of each case (and each defendant) are different. In the end, Velma Jackson—the petitioner's girlfriend of four years—testified that she was riding with him in the van and saw him shoot the victim. On this record, the petitioner cannot establish cause or prejudice.

     5.    *Actual Innocence*

Even when a petitioner fails to establish cause and prejudice, the court still will excuse a default if the petitioner satisfies the miscarriage of justice

exception. To show that a miscarriage of justice will occur if the court denies *habeas* relief, a petitioner must show that he is actually innocent of the offenses of which he was convicted. <u>Hicks v. Hepp</u>, 871 F.3d 513, 531 (7th Cir. 2017). The petitioner "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt.'" <u>House v. Bell</u>, 547 U.S. 518, 536-37 (2006) (quoting <u>Schlup</u>, 513 U.S. at 327).

The petitioner's brief in opposition to the respondent's motion to dismiss does not support a claim of actual innocence. Dkt. No. 54. The court has considered the petitioner's surreply brief because it is in *that* brief that he argues the actual innocence claim, and it is to *that* brief that he attaches exhibits in support. Dkt. No. 59. But case law requires that the petitioner come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." <u>Schlup</u>, 513 U.S. at 324. The burden rests on the petitioner, <u>id.</u>, and he has failed to meet the burden.

The petitioner appears to have attached excerpts from the trial testimony, including the testimony of Velma Jackson. Dkt. No. 59-1 at 18. Jackson identified the petitioner in the courtroom. <u>Id.</u> She testified that the minivan involved in the incident belonged to the petitioner and her and that the minivan was involved in the collision. <u>Id.</u> at 21-22. She testified that she was a passenger in the van while the petitioner was driving. <u>Id.</u> at 24. According to Jackson, the petitioner made a u-turn when the jeep behind him

ran into the van. Id. at 25. The driver got out of the jeep, and Jackson could hear the conversation. Id. at 26, 27. Jackson testified that the petitioner shot the driver of the jeep. Id. at 27. She testified that she saw the petitioner with the gun and that the petitioner pulled the gun out of his pants pocket and pointed it at the driver before shooting him. Id. at 28. She testified that the petitioner then ran off and that she ran off shortly after. Id. She testified that she was with the petitioner when he was arrested and gave a statement to the police. Id. at 30. Given Jackson's testimony, Amanda Larson's failure to pick the petitioner out of the lineup or identify him in court does not establish actual innocence.

The petitioner also attached to the surreply brief what appears to be Larson's trial testimony, in which she testified that there were two people in the van (a female in the passenger seat). Dkt. No. 59-1 at 35. Although Larson said that she could did not get a good look at the shooter, she testified that she saw both individuals run away. Id. at 37-38. Neither Larson's testimony nor the petitioner's arguments constitute "new evidence" that would support an actual innocence claim. Larson's testimony is consistent with Jackson's statement—provided by the petitioner—in which Jackson testified that she was in the van on the day of the shooting, the petitioner was driving, she saw the petitioner shoot the victim and she ran away. See Dkt. No. 59-1 at 5.

The petitioner also argues that his "cellular phone number were 216-414-8153, which were in [the petitioner's] phone contacts as Yashara Hha Hadar Levi, and [the petitioner's] father talked to [the petitioner] from that

24

number and [the petitioner's] cellular device never placed 'the petitioner' on the scene." Dkt. No. 59 at 2. The petitioner attached an incident report in which Detective Timothy Keller wrote that he could not determine the assigned number of the cellular phone but that Yasharahia Hadar Levi's phone number appeared in the contacts. Id. at 2. The petitioner also attached the incident report in which the petitioner's father told officers that he hadn't seen the petitioner for a few months but that he had spoken to him on the phone within the last few weeks at 216-414-8153. Dkt. No. 59-1 at 14. Neither the petitioner nor his father asserts that the two spoke immediately before or during the time of the shooting. Whether a phone—one that appears to have been registered to a different name and perhaps was used by the petitioner—failed to "ping" off a tower near the incident does not establish actual innocence.

Finally, the petitioner insists that if his attorney had called the two witnesses from the rooming house, they would have testified that his van was stolen two to three weeks before the police questioned them. Id. at 3. He says that Jackson even stated that his roommates were there when "she was allegedly dropped off." Id. The petitioner attached the incident reports recording the officers' interviews with the two witnesses. Dkt. No. 59-1 at 6-9. Annie Anderson told the officer that the petitioner drove a minivan that she believed was gray in color, and that the petitioner told her that the van had been stolen. Id. at 7. Corinena Howard told the investigating officers that the petitioner had a gold Chrysler van but that she had not seen it for two to three weeks and that the petitioner had told her it was stolen. Id. at 9. Neither statement

25

establishes actual innocence. These witnesses could not have testified that the minivan *was* stolen—only that the petitioner told them that it had been stolen. Aside from the fact that these statements may not have been admissible because they constitute hearsay, to accept what the petitioner told the roommates, the jury would have had to reject Jackson's testimony that she was in the van with the petitioner at the time of the incident. The jury's verdict demonstrates that they did not reject Jackson's testimony.

The petitioner has not demonstrated "that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." See House v. Bell, 547 U.S. 518, 538 (2006).

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability because no reasonable jurist could conclude that the petitioner has not procedurally defaulted his claims or that he established actual innocence.

## V.   Conclusion

The court **DIRECTS** the Clerk of Court to update the docket to reflect that Kenya Mason is the correct respondent.

The court **GRANTS** the petitioner's motion to clarify case number. Dkt. No. 55.

The court **GRANTS** the petitioner's motion for leave to file a surreply. Dkt. No. 58.

The court **GRANTS** the respondent's motion to dismiss. Dkt. No. 43.

The court **DECLINES** to issue a certificate of appealability.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 18th day of December, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

27